In the ESTATE OF Clarence A. HEIDT, Deceased.

La Ruth H. FEIG, Personal Representative of the Estate of Clarence A. Heidt, Respondent,

v.

Virginia L. KELPE and Sandra L. Kelpe, Appellants.

WD 40737.

Missouri Court of Appeals, Western District.

Jan. 30, 1990.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 27, 1990.

Application to Transfer Denied April 17, 1990.

William M. Barvick, Jefferson City, for appellants.

C. Christy Barton, Jefferson City, for respondent.

Before LOWENSTEIN, P.J., and KENNEDY and GAITAN, JJ.

KENNEDY, Judge.

La Ruth H. Feig, personal representative of the estate of Clarence Heidt, deceased, got a summary judgment for $29,474.07 in a discovery of assets proceeding against Virginia L. Kelpe and Sandra Lee Kelpe.[1] The Kelpes were alleged to have secured this sum by the practice of undue influence upon their aged and mentally infirm uncle while he resided with them during a period of 21 months ending with his death on March 23, 1985.

The Kelpes have appealed. They raise several objections to the granting of the summary judgment.

■ First, the Kelpes say that the summary judgment procedure of Rule 74.04 was not available to the personal representative in a discovery of assets proceeding under section 473.340, RSMo 1986, because the trial court did not, in accordance with Rule 41.01(e), explicitly order the application of the rules of civil procedure. However, section 473.340.2, RSMo 1986, itself specifically makes the rules of civil procedure applicable in discovery of assets proceedings, and appellants' contention to the contrary is rejected.

■ Next, the Kelpes say they were not given sufficient notice of the summary judgment hearing under Rule 74.04(c). The rule requires that notice be served at least ten days prior to the date fixed for the hearing. Where notice is mailed, three days are added to the required time. Rule 44.01(e). The hearing was set for May 2, 1988, which was a Monday. Excluding the day of the mailing, *see* Rule 44.01(a), which was April 19, the hearing was held on the 13th day after the mailing of the motion. This was sufficient.

■ In any case, appellants showed up at the hearing on May 2 and participated therein without any protest on the ground of insufficient notice. They thereby waived any insufficiency of the notice and may not raise it later. *Landmark North County Bank & Trust Co. v. National Cable Training Centers, Inc.,* 738 S.W.2d 886, 892 (Mo.App.1987); *Goth v. Norman,* 693 S.W.2d 175, 178 (Mo.App.1985).

The established facts before the court on the summary judgment proceeding were as follows: Clarence Heidt on July 1, 1983, at the Kelpes' request moved into the residence of the Kelpes, mother and daughter, who were his niece and great-niece respectively. He continued to live there until his death March 23, 1985.

During this period of time, according to admissions requested by the personal representative in the discovery of assets proceeding and not denied by the Kelpes, and according to the uncontradicted affidavit of La Ruth Feig filed in connection with her summary judgment motion, Heidt "lacked the mental capacity, judgment and ability to receive and evaluate information and to communicate decisions to such an extent that he could not manage his financial resources"; he was "reliant on [the Kelpes] for attending to his physical needs and financial management". While he was "in a weakened physical and mental condition and under the domination and undue influence of [the Kelpes], who had taken charge of all of his business, financial and personal

---

**1.** The Kelpes were unrepresented by legal counsel until after summary judgment had been granted against them.

affairs", he transferred into joint accounts, with the Kelpes as joint tenants with himself, several bank and savings and loan accounts which had grown to $29,474.07 by the time the proceeds of the accounts were withdrawn by the Kelpes and appropriated by them.

One of the accounts, a Mutual Savings and Loan Association account had been in the joint names of Heidt and La Ruth Feig and Anna Feig Boehm until it was changed to the joint names of Heidt and the Kelpes on June 11, 1984. On February 26, 1985 (before Heidt's death on March 23) when the account balance was $4,320.69, the Kelpes cashed in the certificate and "appropriated and converted [the proceeds] to their own uses and purposes and are now adversely withholding and claiming the same as their own property."

Another account had a balance of $975.39 on February 16, 1985, when it was cashed by the Kelpes and the proceeds converted to their own use. This account had been in Heidt's individual name but on June 14, 1984, he was "induced" by the Kelpes, without consideration, to transfer the account into his and the Kelpes' joint names.

A third certificate had a balance of $4,969.76 when it was cashed in by the Kelpes on February 26, 1985, and the proceeds converted to their own use. This certificate had been in Heidt's individual name until the Kelpes induced him, without consideration, to transfer the account on June 14, 1984, into an account with himself and them as joint tenants.

Heidt had a checking account at the Exchange National Bank in the sum of $1,425.80 and $18,155.78 in a savings account. On June 11, 1984, he was induced by the Kelpes, without consideration, to establish a joint account with himself and them as joint tenants. Later, before Heidt's death, the Kelpes withdrew $12,067.53 from the accounts, converted the same to their own use and now claim the proceeds as their own.

After Heidt's death the Kelpes appropriated and converted the remaining balance in the Exchange National Bank accounts, $7,140.70, to their own use.

The foregoing facts were established by unanswered requests for admissions and by the allegations of the personal representative's affidavit filed with her motion for summary judgment. The allegations of the personal representative's affidavit were unopposed by timely filed affidavits by the Kelpes.

Do the foregoing facts show that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law"? If so, the personal representative is entitled to summary judgment under Rule 74.04 and we will affirm the judgment.

■ As a general observation, summary judgment, especially for the plaintiff, is rarely appropriate in cases involving proof of such elusive facts as intent, motive, fraud, duress, undue influence, mental capacity, and the like—which must in nearly every case be proved by circumstantial evidence. *See Estate of Harvey,* 776 S.W.2d 918, 920 (Mo.App.1989). *See also Katz v. Goodyear Tire & Rubber Co.,* 737 F.2d 238, 244 (2nd Cir.1984); *Vaughn v. Teledyne, Inc.,* 628 F.2d 1214, 1220 (9th Cir. 1980); *Tankersley v. Albright,* 514 F.2d 956, 963 n. 8 (7th Cir.1975); *Indiana Farm Bureau Cooperative Ass'n, Inc. v. Chicago Regional Port District,* 552 F.Supp. 270, 275 (N.D.Ill.1982).

■ In this case, however, the appellants have made such broad and comprehensive admissions by their failure to respond to the requests for admissions, and by their failure to contradict by opposing affidavits the La Ruth Feig affidavit in support of the motion for summary judgment, summary judgment is in order and must be affirmed. The facts are proved; there is no room for any assessment by the trier of fact of credibility of witnesses, nor any room for disagreement about inferences to be drawn from the facts so established. What is established is the mental infirmity of Clarence Heidt, the confidential relationship between himself and the Kelpes, his reliance upon them for all his needs, their domination of him, their control of his fi-

nances, their initiative in securing the transfer of the funds into joint accounts with himself and them as joint tenants with right of survivorship, and their withdrawing the funds from the accounts and appropriating them to their own use, all without consideration. Such facts, uncontradicted and unexplained, entitle the personal representative to summary judgment. *Strauser v. Dayton,* 762 S.W.2d 862, 865 (Mo.App. 1989); *Estate of Brown v. Fulp,* 718 S.W.2d 588, 595–96 (Mo.App.1986); *Godsy v. Godsy,* 504 S.W.2d 209, 213–14 (Mo.App. 1973); *see also Smith v. Chatfield,* 745 S.W.2d 199, 204 (Mo.App.1987); *Disbrow v. Boehmer,* 711 S.W.2d 917, 926–27 (Mo.App. 1986); *Carroll v. Knott,* 637 S.W.2d 368, 370–71 (Mo.App.1982).

■ The Kelpes then say their affidavits in response to the La Ruth Feig affidavit supporting the motion for summary judgment should have been considered by the trial court. The affidavits were tendered at the hearing, and apparently had not been previously served upon the personal representative. Rule 74.04(c) provides that opposing affidavits may be served "prior to the day of hearing". The movant for a summary judgment is entitled to at least one day's service of opposing affidavits. Opposing affidavits served and filed at the hearing come too late for consideration over the objection of the movant. *See Price v. Missouri Pacific Railroad Co.,* 755 S.W.2d 29, 31 (Mo.App.1988); *Landmark North County Bank,* 738 S.W.2d at 890; *Warner v. Berg,* 679 S.W.2d 913, 914–15 (Mo.App.1984). Appellants did not ask for a continuance of the hearing to a later day, which, if granted, would have allowed the service of their affidavits prior to the day of the hearing.

Judgment affirmed.